# State Highway Commission v. Saylor.

(Decided Dec. 15, 1933.)

BAILEY P. WOOTTON, Attorney General, FRANCIS M. BURKE, Assistant Attorney General, and J. B. CARTER for appellant.

JAMES O. BAKER and R. L. POPE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Joe Saylor's claim for compensation was not allowed by the Workmen's Compensation Board. He filed petition for review in the circuit court, which reversed that finding and remanded the case to the board with instructions to make him an award, from which judgment the state highway commission has appealed.

The Workmen's Compensation Board in its findings made a statement from which this is copied:

"On September 10, 1931, the plaintiff, Joe Saylor, was employed as a road-hand on the Mayo Trail Highway and was engaged in the work of mowing briers from said Highway at a point five or six miles distant from Wallins Mill at which point, the accident hereinafter mentioned occurred, that one Marion Howard was at said time, the road maintenance man of defendant for Harlan County and over the section of the road upon which plaintiff was injured, and that plaintiff was working under the immediate supervision of the said Howard.

"It further appears that the pay of defendant's employees and other employees or road hands employed by the defendant began when they commenced work, and ceased when the work for that day had finished.

"After finishing the work at the point mentioned along about 4 o'clock in the afternoon of the day upon which the accident occurred, the plaintiff and a number of other hands employed by defendant company got into the truck driven by the said Howard, and started for home; the home of Howard being at Wallins.

"The plaintiff lived on the left-hand side of said road, and a country road led from the said highway a short distance to the home of plaintiff. The plaintiff signaled or notified Howard to let him off of the truck opposite the residence of the plaintiff. Howard slowed down the truck sufficiently to permit plaintiff to alight safely therefrom, on the right-hand side of said road.

"After plaintiff had alighted and was on the highway, Howard started his truck towards Wallins, and had proceeded a distance of from 150 to 200 feet, when he received notice that plaintiff had been run over and injured. After this notice Howard proceeded back to the point where plaintiff was injured.

"Just after the plaintiff was discharged from the truck and said truck had proceeded 150 or 200 feet from the point of the accident, a private auto-

mobile owned by Mr. Perdee, coming in the opposite direction, passed said truck and struck plaintiff, who was still on the right-hand side of the road, and had made possibly a step towards crossing the road for the purpose of going to his home, breaking plaintiff's left leg.

"The men so employed would start with Howard in the Ford truck used to transport the laborers and tools from his home in Wallins. If, however, the men lived along the road and in the direction of the work to be done, Howard would stop for them at the point nearest their residence and transport them to the point at which the work at said time was to be done, transporting them back in like manner when the work was finished.

"There had been some evidence introduced by the defendant to show that this transportation was entirely a matter of accommodation and that no obligation or duty rested upon defendant to furnish said transportation to and from their work.

"The pay of the employee started only when he began his work at the point of destination, and ceased when he quit work for that day. No charges were made for the transportation. Notwithstanding this, it is our opinion that when we consider that the practice and custom was at the time of said injury and for a long time prior thereto, to gather up the hands at the points hereinabove mentioned, and transport them to and from their work, the evidence is sufficient to establish an implied contract, at least, upon the part of the defendant to so transport its said laborers, and that it may be read into and considered as a part of the contract of the employment.

"Especially is this true when we further consider that this transportation was clearly to the interest of the employer, due to the distances that the employees or many of them resided from the particular place of work, and to the fact that it enabled it to begin the work promptly by having the hands there at an early hour.

"There is practically no controversy in this case as to the manner in which this accident occurred. The portion of section 4880 of the Stat-

utes applicable to this case is as follows: 'It shall effect the liability of the employers subject thereto to their employees for personal injuries sustained by the employees by accident arising out of and in the course of his employment.'

"It will be observed that in cases where the employer is made liable under the Compensation Law for an injury to the employee while being transported, the basis of the extension of the general rule governing the going to and returning from work of the employee is contract—a contract must exist between the employer and employee for the employer to perform this service [see section 265, p. 756, vol. 1, Workmen's Compensation Law by Schneider, and cases cited under said heading], thereby the relation of employer and employee, which must exist at the time of the injury to hold employer liable, is preserved and extended during the time and up to the expiration or termination of said contract, and expires when the obligations of said contract have been fulfilled.

"We now come to the most difficult point in this case and the one that has given us the greatest concern. This is: Did the injury to plaintiff arise out of and in the course of his employment?

"The conjunction 'and' makes it imperative, under the Compensation Law, that the injury complained of must both 'arise out of' and be 'within the course of the employment.'

"The words 'out of' point to the cause or origin of the accident. The words 'in the course of' to the time, place, and circumstances under which the accident takes place. Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524.

"The general rule is well settled that accidents which occur while an employee is going to or from work are not considered as arising out of and in the course of his employment. While this is the general rule, it is equally well settled that there are many exceptions to it, and that the circumstances of each case are the determining factor in deciding the case under consideration, and many exceptions to this rule have been recognized.

"In the above case of Phil Hollenbach Co. v. Hollenbach, the court held that in determining whether an accident arose out of and in the course of the employment, each case must be decided with reference to its own attendant circumstances, and it has been stated rather broadly by eminent authorities that argument by analogy is valueless.

"This is true, but it is also true, as we conceive the law, that certain principles in accordance with the Compensation Law may be utilized in determining the question we are discussing in this particular case.

"The question naturally addresses itself, in view of the facts of this case, as to when the relation of master and servant, or employer and employee, was terminated on the occasion we are considering.

"It appears to us that this relationship could be extended no farther, and no longer, than the contract of defendant and plaintiff with reference to transportation continued.

"It is only by virtue of this contract that the liability of defendant is extended beyond the general rule, and that therefore upon the performance of its contract by the defendant, it appears that the plaintiff was then relegated to the general rule as to employees going to and returning from work. With this view of the case, the question presents itself as to when the obligation of defendant to plaintiff growing out of said transportation was completed.

"It is our view of the case that the same was completed and that the relationship of master and servant was severed, when, at the instance of the plaintiff himself, he was deposited safely from said truck upon the right-hand side of the road at the point designated by him and nearly opposite his place of residence.

"After depositing plaintiff, the truck proceeded probably 200 feet before or about the time the accident happened, and that at the time the private car of Mr. Perdee passed said truck and struck the plaintiff, who, according to the evidence, had ad-

·vanced only a very short distance from said right-hand side of the road where he had been deposited, possibly some 18 inches or 2 feet therefrom.

"If the time of the severance of the relation of employer and employee for said day did not terminate when he was deposited from said truck upon said road at the instance of plaintiff, and at the point designated by him, when did this relationship terminate?

"It can hardly be said that time is the controlling factor and that said relationship did not terminate because of the little time that elapsed between the alighting safely of plaintiff from said truck to the time of his injury. It appears to us that after being deposited at said point, designated by him, and upon said public highway, the plaintiff then became subject to the perils incident to any one, pedestrian or traveler, on said highway. It may be contended that the obligation of defendant to plaintiff at the time of alighting is extended so as to require the defendant to use care and diligence not to permit the plaintiff, even if it was at his own request, to alight at said point in view of the on-coming car of Mr. Perdee. It appears, however, from the record, and the proof as to this seems to be uncontradicted, that the truck driven by the foreman, Marion Howard, was stopped on the right-hand or his side of the road, and that plaintiff got off of said truck on said right-hand side of the road.

"Under the circumstances, it seems to us as a justifiable inference, from the record at least, that the Perdee car, after passing this truck, must have swung to its left, or the wrong side of the road for it at the time it struck the plaintiff. This inference is strengthened considerably by the fact that Perdee and the Travelers' Insurance Company were willing upon a compromise settlement to pay to plaintiff $1,250 plus his hospital bills, amounting to $300, on account of said accident. We know that compromises are frequently made to avoid litigation, but it does not appear probable that this substantial amount would have been paid if Perdee, direct cause of this accident, had not been at fault.

"If Howard had stopped the truck or permit-

ted plaintiff to alight therefrom at a time when Howard was on the wrong side of the road, and under such circumstances plaintiff had been injured, the argument above mentioned would be of more force. Although it appears that Howard at the time of permitting plaintiff to alight from his truck on the right-hand side of said road did not see the on-coming car of Perdee, he had a right to assume that any car driven or traveling from the opposite direction and meeting his truck would maintain its own side of the road and not swerve over to the point where plaintiff had alighted. Among other risks one assumes in so being upon the traveled highway is that cars and trucks traveling thereon do not always obey the traffic laws and that one may be injured by their negligence and carelessness and without fault upon his part.

"Reverting to the question as to when relationship of master and servant was terminated in this case, suppose the truck from which he had alighted had been gone from the place of accident, say, five minutes? Would the defendant be liable for this injury and would the relationship of master and servant have continued under these circumstances? We think the answer for this should be, 'No.' The very difficulty of fixing the time as to when the relationship of employer and employee was severed on this occasion makes us more strongly of the opinion that the true termination of same was when the planitiff alighted from said truck and thereby severed his connection with defendant for said day. Certainly is this true, unless it can be said that defendant's foreman permitted plaintiff to alight at a time and place where the danger to plaintiff was in excess of, or exceeded, the danger incident to being on said highway. We do not think this is the case.

"The plaintiff has argued that the plaintiff, having been injured upon a section of the road over which the maintenance man, Howard, had charge, that in law this is equivalent to having been injured upon the premises of the defendant. We think this construction of the word 'premises' is a strained one. He was injured at a point five or six miles from where he was engaged in work. It is

true that the defendant department had control over the road, including the point where the plaintiff was injured, for the purposes of maintenance and construction, but not otherwise. We do not think said road constituted the premises of the highway department, and thereby brought plaintiff within the rule of having been injured upon the premises of his employer.

"In reaching the conclusion which we do that the injury of plaintiff complained of did not arise out of and in the course of his employment by defendant, we are not unmindful of the fact that we should give a liberal interpretation to the Compensation Act, including the provision governing the above. While this is true, we have been unable to bring ourselves to the conclusion that the plaintiff, at the time of the injury, occupied a position entitling him to the benefit of the act.

"Dr. John D. Burns testified in May, 1932, both of the large bones were broken in plaintiff's left leg between the ankle and the knee, and had not been properly knit together, and that the size of the said left leg had diminished from normal. He further stated that plaintiff has a total impairment of this leg on account of the injury, and that it would be better for the leg to be off and plaintiff have an artificial limb."

As we have reached the conclusion that judgment should be reversed, we shall set out some of the cases upon which the appellee relies and which probably induced the circuit court to render the judgment before us.

In Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 160, 13 A. L. R. 524, we held:

"The terms 'out of' and 'in the course of' are not synonymous, and if either of these elements is missing, there can be no recovery. The two questions are to be determined by different tests. The words 'out of' refer to the origin or cause of the accident, and the words 'in the course of' to the time, place, and circumstances under which it occurred. So it has been said that an injury which occurs while an employee is doing what he might reasonably do at the time and place is one which arises 'out of and in the course of the employment.' "

Young Hollenbach had been killed while washing and dressing himself on the master's premises preparatory to going home after his day's work, and compensation was allowed.

In Wilson Berger Coal Co. v. Brown, 223 Ky. 183, 3 S. W. (2d) 199, it was held that Brown, who worked upon the company's coal tipple, and who was injured by a defect in a road provided by the company, which Brown was traveling, after his day's work, to reach his home, which he rented from the company, was entitled to compensation.

In Turner, Day & Woolworth Handle Co. v. Pennington, 250 Ky. 433, 63 S. W. (2d) 490, it was held that the handle company was under obligation to transport Pennington to and fro between his home and his work, and that Pennington who was injured on a public highway, while making some repairs upon his own automobile for which the handle company furnished the oil and gas, was entitled to compensation.

The facts in the present case are in no dispute, so the question is one of law for the court. Rusch v. Louisville Water Co., 193 Ky. 698, 237 S. W. 389; Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543. One of the first questions we must determine is just what constitutes "the master's premises" in this case. For Saylor, it is argued that it is the entire 26 miles composing the section of highway, of which Howard was in charge of the maintenance; but it could just as logically be extended to the entire highway system of the state, for Howard is not the master, the state highway commission is the master, and it is as much in control of the improved highway it has built in Fulton county as it is of this one. As a matter of fact, the state highway commission neither owns nor controls any part of the Kentucky highway system, but it is the state of Kentucky that owns these roads and controls them. The state highway commission is an agency empowered to construct roads and to have work done and repairs made on roads; but it owns none of them, and in the doing of the things it is authorized to do, its premises as regards each piece of work consists of the place where the work is being done and such additional premises reasonably near thereto as are reasonably and necessarily used in the doing of that work. In this case it was the place where Saylor was cutting briers. Hence

we find the Hollenbach and Wilson Berger Coal Co. cases do not apply, neither was this injury received by Saylor during any part of the transportation of him by his master. All the transportation he expected or which he claimed to have a right to have done for him had been completed, and he had been deposited at the expected place in safety, when he was injured by an entirely independent agency; hence the Pennington Case does not apply.

Saylor cites these cases from foreign jurisdiction, decisions rendered under statutes possibly radically different from ours: State Comp. Ins. Fund v. Ind. Comm. et al., 89 Colo. 426, 3 P. (2d) 414; Cuellar v. American Employers' Ins. Co. of Boston, 36 N. M. 141. 9 P. (2d) 685; Texas Employers' Ins. Ass'n v. Boecker (Tex. Civ. App.) 53 S. W. (2d) 327; Terlecki v. Strauss, 85 N. J. Law, 454, 89 A. 1023; Gore v. Norton Hill Colliery Com., (1909) 2 K. B. 539; Donovan's Case, 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C, 778; Holmes v. Great Northern R. Co., 16 Times L. R. 412; Cremins v. Guest, 24 Times L. R. 189, 1 B. W. C. C. 160; Mole v. Wadsworth (Eng.) 6 B. W. C. C. 129; Richards v. Morris (Eng.) 7 B. W. C. C. 130; State ex rel. London & Lancashire Indem. Co. v. District Court, 141 Minn. 348, 170 N. W. 218; Hackley-Phelps-Bonnell Co. v. Ind. Comm., 165 Wis. 586, 162 U. W. 921, L. R. A. 1918A, 277; McClain v. Kingsport Improvement Corp., 147 Tenn. 130, 245 S. W. 837; Swanson v. Latham, 92 Conn. 87, 101 A. 492; Guiliano v. Daniel O'Connell's Sons, 105 Conn. 695, 136 A. 677, 56 A. L. R. 504; DeConstantin v. Public Service Commission, 75 W. Va. 32, 83 S. E. 88, L. R. A. 1916A, 329.

Almost without exception the injuries involved in the cases last cited were inflicted by agencies belonging to or controlled by the master, whereas the injuries sustained by Saylor, unfortunately for him, were inflicted by an independent agency over which the state highway commission had no control.

The findings of the Workmen's Compensation Board are approved, and the judgment of the circuit court is reversed.