REGAN, Judge.
Plaintiff, Sam' S. Ferrara, a 63-year-old common laborer, instituted this suit against the defendant, the City of New Orleans, endeavoring to recover workmen’s compensation at the rate of $29.98 per week for a period of four hundred weeks, subject to a credit for compensation and medical expenses previously paid. Plaintiff asserted that he was totally and permanently disabled as the result of a fractured left hip, which occurred on March 28, 1955, when he was alighting from the defendant’s truck after being transported from a job he had completed that afternoon.
Defendant answered and generally denied all the allegations of plaintiff’s petition.
*897 From a judgment in favor of the plaintiff in the amount of $29.98 per week commencing March 28, 1955, and running for the period of his disability not to exceed four hundred weeks, subject to a credit of forty weeks, and medical expenses amounting to $46.50, defendant has prosecuted this appeal.
The defendant has pleaded in this court, for the first time, the exceptions of no cause or right of action predicated on the theorem that plaintiff’s injury did not occur in the course and. scope of his employment and asserts in substantiation thereof that the plaintiff furnished his own transportation to reach the City yard in the morning. Upon the termination of the employees’ work in the evening, the City department head would send a truck to the location where the men had been working in order to collect tools and equipment used by them; in returning to the City yard, the employees were permitted to ride in the truck as an accommodation so that they could conveniently reach public transportation; since the plaintiff was injured as he alighted from the truck, which was after his employment had ceased and when he was on his way home, he is not entitled to recover disability benefits in conformity with the provisions of the Workmen’s Compensation Act.
“The general rule under the Workmen’s Compensation Law of this State is that an injury suffered by an employee away from his employer’s premises, while going to or returning from work, does not arise out of and in the course of his employment. However, this rule is subject to three exceptions: * * * The second exception is where the employer furnishes the means of transportation. * * * ”[1]
The record reflects that the plaintiff did furnish his own transportation to the City yard each morning; however, he was later transported in a City truck to the situs of that day’s work. In the evening when he finished working, a City truck regularly rode him and other employees from the j-ob which may have been in a remote section of the City to the most convenient public transportation. In view of these facts we are of the opinion that the exceptions are not well taken and should therefore be overruled. Since the transportation was regularly furnished to the plaintiff solely because of his status as an employee, the inference is reasonable that the transportation depended upon the existence of the employment and was therefore incidental to it.[2]
We now turn our attention to the merits of the case. The record reveals that the plaintiff, a man 63 years of age and the father of nine children, had been employed by the defendant, the City of New Orleans, Department of Sanitation, as “a grass cutter and trash man” for about eleven years. On March 28, 1955, he was being transported by the defendant’s truck to a convenient bus stop where he could obtain public transportation to his home. In alighting from the truck he fell and fractured his left hip. He was removed to the Mercy Hospital, where he was visited by his employer’s physician, Dr. N. J. Tessi-tore, who on March 30, 1955, referred him to Dr. Irvin S. Cahen, a specialist in orthopedics.
He was treated by Dr. Cahen until November 21, 1955, when he was discharged and instructed to return to his former occupation. The plaintiff testified that he subsequently resumed his employment and “tried [to work] for about three or four weeks” but he was required to walk “about 80 blocks, 90 blocks or something like that” and he “just couldn’t keep up with it;” he would “sit down * * * and * * * couldn’t move,” his leg “was so stiff.” Thereafter plaintiff discontinued working. Hence this suit for compensation.
Plaintiff, through his counsel, insists that as the ultimate result of the fractured hip *898 he is unable to perform the same work or work of a similar character which he was engaged in when the accident occurred. Defendant, on the other hand, maintains that the plaintiff is not disabled and that he is fully capable of resuming his former occupation as a grass cutter or trash man.
Dr. Tessitore did not appear as a witness on behalf of the defendant since he referred the plaintiff to Dr. Cahen, a specialist in orthopedics. Defendant in order to substantiate his contention that the plaintiff was capable of resuming his former occupation produced Dr. Cahen as an expert, and he testified:
“[In] November of 1955 * * * we felt that his healing had progressed well enough to a point where it no longer required a brace for support, that the fracture was healed. At that time I submitted a report as far as the fracture was concerned it was well healed. At that time in November when submitting my report as to the discontinuation of treatment I indicated that the patient had some muscular atrophy but believed by using the leg, by walking, such muscle action would return. He had a little stiffness of the knee at the time and lacked 15 degrees of complete bending of the knee and complained some in the rotation of the hip.
“ * * * these conditions existed as I interpreted normal in view of the type injury he had sustained and I indicated that it constituted approximately five per cent loss of his limb efficiency, but believed with continued activity he probably would improve. Realizing the fact that the man was in the upper age group and for injuries of that type the logical reaction to activity would be slower than in a person of a younger age group.
“ * * * I believed that he would be capable of returning to his former type work * *
On October 25, 1956, about a year and seven months after the accident, plaintiff was examined by Dr. Harry D. Morris of the Ochsner Clinic and likewise a specialist in orthopedics, who on behalf of the plaintiff testified that he:
“ * * * had a permanent partial disability of the extremity of fifteen to twenty per cent with an excellent result as far as the union of the fracture was concerned. He had good alignment, but I think any patient of that age, it is difficult to restore the muscle strength and even though you get excellent results anatomically by X-ray and most of the tests that we know, we know that these elderly people seldom get back to the same physical status as it was before they were injured. They have to be put in plaster casts and it takes some little time to get the muscle strength back and frequently they never do.
“ * * * I felt the permanent disability which I rate at fifteen to twenty per cent of the extremity probably prevented him from returning to the occupation that he had- — -where he would be on his feet for an undue period of time. I felt he would have difficulty in returning to that sort of occupation.”
On July 2, 1956, which was about a year and three months after the accident, plaintiff visited Dr. Jack Wickstrom, also a specialist in orthopedics, who examined him and prepared a written report dated July 12, 1956, which was offered and accepted in evidence on behalf of the plaintiff. In substance he related that the plaintiff:
“ * * * still shows evidence of disability in that he still has some atrophy of his left thigh; however, I was unable to ascertain any gross paresis or paralysis of any specific muscle group in either lower extremity and could find no evidence of neurological changes suggestive of other injuries *899 which would produce weakness in this extremity. I was unable to determine any evidence of circulatory changes in this extremity which might explain the intermittent type of pain with activity gradually relieved by rest. There is approximately 12% less complete range of motion in the left hip than in the right which represents approximately 15.4% disability of the hip joint itself which represents 50% of the value of the lower extremity. Therefore, the residual disability in this lower extremity is estimated at 7.7%. It is my distinct impression that if this client will participate in a carefully graded series of exercises, the residual weakness in this extremity can be further decreased.”
In addition to the expert opinions of the foregoing physicians there appears in the record the lay testimony of several fellow employees, which was principally offered in support of plaintiff’s contention that he is totally and permanently disabled, and it generally revealed the arduous nature of plaintiff’s present work. We have reviewed this testimony and find that it generally sustains the conclusions reached by Dr. Morris, who believed that the plaintiff is afHicted with sufficient infirmities emanating from a fractured hip incurred by him on March 28, 1955, to militate against the full resumption of his former employment as a grass cutter or trash collector.
It is too well settled to need citation in support thereof that a plaintiff in a compensation case carries the burden of proof to establish his case by a reasonable preponderance of the evidence. However, a compensation case, like any other civil case does not have to be proven beyond a reasonable doubt.
After a comprehensive analysis of both the expert and the lay testimony, including the honest testimony of plaintiff, a man of about 63 years of age, his good prior work record, his obvious desire for continuous employment, his economic necessity therefor, being the father of nine children, and the nature of the injury incurred by him, we believe, as the trial judge did, that he has sustained the burden of proof and has established with that certainty that the law requires his claim of total and permanent disability to perform the arduous duties of a “grass cutter and trash man.”
We are fully cognizant of the caution which we must exercise in most cases of this nature where there exists conflicting medical opinions. However, if plaintiff’s condition should improve in the future, the defendant may avail itself of the provisions of the Workmen’s Compensation Act, LSA-Revised Statutes §§ 23:1021-23:1351, which afford it the right to reopen the case after the lapse of six months.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Babineaux v. Giblin, La.App.1948, 37 So. 2d 877, 879.

. Neyland v. Maryland Casualty Co., La. App.1946, 28 So .2d 351.