COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Agee
Argued at Alexandria, Virginia


BARBARA T. BLAUSTEIN
                                              OPINION BY
v.    Record No. 2860-00-4         JUDGE ROSEMARIE ANNUNZIATA
                                           AUGUST 7, 2001
MITRE CORPORATION AND
 TRAVELERS INDEMNITY COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            William S. Sands, Jr. (Duncan and Hopkins,
            P.C., on brief), for appellant.

            Francis G. Marrin (Law Office of Roger S.
            Mackey, on brief), for appellees.


     The appellant, Barbara T. Blaustein, appeals the denial of

benefits by the Workers' Compensation Commission for an injury

she suffered on February 5, 1997, while on her way to work.

Blaustein contends the commission erred in finding that her

injury did not arise out of her employment under an exception to

the "coming and going" rule.  For the following reasons, we

affirm.

                              I.

                          BACKGROUND

     The Mitre Corporation, a federally funded research and

development center, hired Blaustein as a scientist in March

1992.  At the time of the accident on February 5, 1997, she

resided in Silver Spring, Maryland.  From 1992 to 1995, she commuted by car to Mitre's office in Tysons Corner, Virginia.

In 1995, in accordance with an inter-governmental Personnel Assignment Agreement (IPA), she began working at the National Science Foundation (NSF), an agency of the federal government located in Arlington, Virginia.  The IPA Agreement for Blaustein originally was to run from November 1995 through November 1996, but was extended for one year through November 1997.

Before the IPA assignment, Blaustein parked her car free of charge at Mitre's facility in Tysons Corner in a parking lot adjacent to the company's building.  Parking at NSF was either on the street, if available, or for a fee in a public garage under the NSF building.  When Blaustein accepted the assignment at NSF, Mitre agreed to reimburse her for either the cost of garage parking at NSF or the cost of Metro subway transportation.

The manner, mode, and route of travel to NSF were solely within the discretion of Blaustein.  In making the daily commute to NSF over the fifteen-month period prior to her accident, Blaustein frequently drove from Silver Spring to Arlington and parked her vehicle in the basement of the NSF building.  On the days she did not drive to NSF, she drove to the Wheaton Metro station, parked her car in the Metro parking lot or on the public street, and took the subway to NSF.  She was reimbursed for the parking fee at the NSF garage for the days she drove,

and for the Metro fare on the days she took the subway. She received neither mileage nor gasoline costs.

After taking the NSF assignment, Blaustein maintained her office at the Mitre building. She only spent one or two days per month at the Mitre facility, but maintained daily contact with her Mitre colleagues both over the telephone and by e-mail. Blaustein typically worked on some Mitre-related tasks while working at NSF, in addition to attending her NSF related responsibilities.

On the morning of February 5, 1997, Blaustein left her home in Silver Spring to travel to work at NSF. She drove approximately one mile to the Wheaton Metro station and parked her car on a residential street. While crossing at a public intersection on her way to the subway station, she was struck by an automobile. She was taken to the hospital where she began treatment for her injuries. The extent of her injuries is not at issue in this case.

Blaustein filed a workers' compensation claim against Mitre Corporation and their workers' compensation carrier, Travelers Indemnity Company, seeking benefits for the injury. An evidentiary hearing was held before a deputy commissioner on September 13, 1999, and he issued an opinion on December 1, 1999. The deputy commissioner found the "special errand" exception to the "coming and going" rule applied and awarded disability and medical benefits to Blaustein.

Mitre and Travelers requested review before the full commission on three issues: (1) whether Blaustein was an employee of Mitre at the time of her accident; (2) whether Blaustein's accident arose out of and in the course of her employment under an exception to the "coming and going" rule; and (3) whether Blaustein was entitled to temporary total disability benefits. In its opinion dated November 15, 2000, the full commission found Blaustein to be an employee of Mitre; however, it ruled the accident did not fall within an exception to the "coming and going" rule and, therefore, denied benefits.

Blaustein appealed to this Court on the sole issue of whether her accident fell within an exception to the "coming and going" rule.

II.

ANALYSIS

Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review de novo on appeal. Norfolk Community Hosp. v. Smith, 33 Va. App. 1, 4, 531 S.E.2d 576, 578 (2000).

An employee may recover workers' compensation benefits when the injuries result from an event "arising out of" and "in the course of" employment. Generally, an injury sustained by an employee while "coming and going" to work does not arise out of or in the course of the claimant's employment and is not compensable. Sentara Leigh Hosp. v. Nichols, 13 Va. App. 630,

636, 414 S.E.2d 426, 429 (1992) (en banc); see also Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 13.01 (2000) ("going to and from work is covered only on the employer's premises"). This general rule, also known as the "premises" rule, has three exceptions: (1) where the means of transportation are provided by the employer or the time consumed by travel is paid for and is included in the employee's wages; (2) where the way used to and from employment is the sole and exclusive means of ingress and egress; and (3) where the employee is engaged in some duty or task in connection with his or her employment, i.e., when the employee is on a special errand. Sentara, 13 Va. App. at 636, 414 S.E.2d at 429.

Blaustein contends the first and third exceptions apply to her accident. We disagree and find that her injury did not arise out of or in the course of her employment.

## A. The Transportation Exception

Blaustein contends that because Mitre reimbursed her for her subway fare on the days she took the Metro to NSF, her accident, which occurred while she was traveling from her home to a Metro station on her way to NSF, is compensable under the "transportation" exception to the "coming and going" rule. We

disagree and find Blaustein's injury does not fall under the "transportation" exception.[1]

The issue raised in this case is one of first impression in Virginia. Earlier cases addressed the right to compensation as a result of an injury sustained by an employee being transported to and from a place of employment in a vehicle furnished or driven by the employer. In Scott v. Willis, 150 Va. 260, 142 S.E. 400 (1928), for example, the employer was required by the employment contract with the employee to provide transportation for the employee to and from his home each day. The employee had exited the employer's truck and began to cross the highway to his home, which was two blocks away. An oncoming car struck the employee as he crossed the road. The employer contended that benefits should not be awarded because the employee had left the truck. The Virginia Supreme Court disagreed and held the accident arose out of and in the course of the claimant's employment based on the employment agreement between the parties. See also Bristow v. Cross, 210 Va. 718, 173 S.E.2d 815 (1970) (employee injured while being transported in employer's truck); Hann v. Times-Dispatch Pub. Co., 166 Va. 102, 184 S.E. 183 (1936) (same); Boyd's Roofing Co. v. Lewis, 1 Va. App. 93, 335 S.E.2d 281 (1985) (same).

---

[1] We do not decide whether Blaustein's injury would be compensable had she been injured while at the subway station waiting to board the Metro.

In *Provident Life & Accident Ins. Co. v. Barnard*, 236 Va. 41, 372 S.E.2d 369 (1988), the Virginia Supreme Court extended compensation to situations where the employer "agrees to provide the employee transportation by company vehicle or public conveyance; or to pay the employee wages or salary for the time spent in travel required by the work; or to reimburse the employee expenses incurred in the operation of his own vehicle in the performance of his duties." *Id.* at 47, 372 S.E.2d at 372-73. *See also Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 482-83 (1947) ("Where there is that obligation [to provide transportation], it becomes irrelevant in this setting whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the costs of transportation by any means they desire to use.").

The principles to be derived from *Scott* are based primarily on contract principles. In *Scott*, the "contract of employment provided that [Scott] was to receive free transportation to and from his home . . . and the place where he was required to work." *Scott*, 150 Va. at 263, 142 S.E. at 400. Based on the contract, the Virginia Supreme Court found the right to compensation well established, stating, "in view of the contract of the employer to transport the claimant back to his home, if the injury occurred during the transportation, it arose out of

and in the course of his employment, and is, therefore, compensable." Id. at 265, 142 S.E. at 401; see also Cardillo, 330 U.S. 469 (through a union contract, employer had agreed to pay claimant's full transportation expenses to and from work); Katz v. Katz, 75 A.2d 57, 58 (Conn. 1950) (employer agreed to transport claimant home each night); Sihler v. Lincoln-Alliance Bank & Trust Co., 19 N.E.2d 1008, 1008 (N.Y. 1939) (employer agreed to ensure that claimant "got home safe" if claimant would agree to stay and work overtime).

In rejecting the employer's contention in Scott that the contract to provide transportation did not extend coverage to the moment in time when the worker was leaving the vehicle provided by the employer, the Virginia Supreme Court stated:

> To sustain [the employer's] contention would be too narrow a construction of the act, which is everywhere liberally construed in favor of the employee. It is also too narrow a construction of the evidence in this case . . . . It could hardly be doubted, we think, that if the injury had occurred while the claimant was approaching the automobile for the purpose of commencing his journey, either to his work or to his home or while in the act of boarding it, that this would be compensable. It is difficult to fix the precise moment at which liability in such a case would cease – that is, the very instant when the homeward journey is ended; and in this case, under the facts, the question is very close . . . .

Scott, 150 Va. at 266, 142 S.E. at 401. Under the contract in Scott, "the transportation of [the] claimant to his home was not

completed until he had reached a point which exempted him from the risks incident to that particular journey."  Id.

In addition to employing contract principles in reaching its decision, the Supreme Court analogized the circumstances underlying liability in Scott to those associated with working on the employer's premises.  The premises theory of liability recognizes implicitly that the employer is liable for injuries and attendant risks occurring in places over which it has control or for harm to the employee caused by risks that it generated in some way.

> [E]mployment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done.  If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of employment as much as though it had happened while the employee was engaged in his work at the place of its performance.

Id. at 268, 142 S.E. at 402; see also Larson, supra, § 15.01[1] (the rationale behind the transportation exception "depends upon the extension of risks under the employer's control").[2]

---

[2] By treating employer-provided transportation as an extension of the employer's premises, courts have extended the employer's liability to employees boarding and alighting from vehicles furnished by the employer.  See Ferrara v. City of New Orleans, 100 So.2d 896 (La. Ct. App. 1958) (employee injured while alighting from employer's truck); Gibbs v. Pizzolato, 67

The analogy to the employer's premises operates less effectively in cases such as the one presently before us. As noted by Professor Larson, "it would be undesirable to start the dangerous and unending game of fixing a 'reasonable distance' to which protection is extended." Larson, <u>supra</u>, § 15.04.[3] In such

So.2d 139 (La. Ct. App. 1953) (employee injured as she stepped from employer's vehicle). Liability has also been found to exist when the injury occurs on pathways used by the employee upon exiting the vehicle at the invitation or direction of the employer or with the employer's acquiescence. See <u>Flannagan v. Webster & Webster</u>, 142 A. 201, 204 (Conn. 1928) (where employer stopped truck across the road from the employee, this constituted an "invitation" or "order" to cross the road to board the employer's vehicle); <u>Povia Bros. Farms v. Velez</u>, 74 So.2d 103, 105 (Fla. 1954) (employer's truck stopped across the road from the claimant's home, constituting an "invitation" for claimant to cross road to board truck); <u>Baldwin v. Pepsi-Cola Bottling Co.</u>, 108 S.E.2d 409, 410 (S.C. 1959) ("When the truck, driven by his superior, was stopped for him to board it, it was an implied direction of the employer to him to cross the street and do so; he was no longer master of his movements. The crossing of the street thereby became incidental to the employment . . . ."). In other cases, liability has been extended where a special hazard exists, either associated with or created by the employer-provided transportation. See <u>Katz</u>, 75 A.2d at 58 (employer directed employee to walk to corner and take bus home; because sidewalk leading to bus stop was unshoveled, employee was forced to walk on side of road, where he was struck by passing vehicle); <u>Becker v. Industrial Commission</u>, 719 N.E.2d 792, 797-98 (Ill. App. Ct. 1999) (employee dropped off across the street from his house and the position of the employer's vehicle obstructed employee's view as he crossed the road); <u>Devito v. Imbriano</u>, 332 N.Y.S.2d 577, 579-80 (N.Y. Sup. Ct. 1972), <u>aff'd</u>, 350 N.Y.S.2d 406 (N.Y. 1973) ("The means of egress from the employer's truck created a hazard and danger of injury since decedent had to descend into traffic on the driver's side . . . .").

[3] Larson, <u>supra</u>, § 15.04 states:

The confusion that characterizes this class of cases could be cleared up by forthrightly following the analogy of

exceptions to the main premises rule itself. If one thinks of the employer's truck as a floating fragment of the premises, the analogy will supply answers in several familiar types of cases. When the employer's truck pulls up across the street from the plant gate, the most fitting analogy is that of travel between two parts of the premises. Let us suppose that there is an employer-maintained parking lot on the same side of the street where the truck boards and discharges employees. An employee parking his or her own car in that lot would be within the course of employment crossing the street in most jurisdictions. With equal reason the employee crossing between plant gate and truck is in the course of employment.

However, when the employee approaches the truck from home in the morning, or leaves the truck at night, the analogy just invoked does not apply. For reasons discussed in connection with the main premises problem, it would be undesirable to start the dangerous and unending game of fixing a "reasonable distance" to which protection is extended. One analogy that might sometimes apply would be that of the special hazard necessarily encountered in the access route. For example, if the employer's truck stopped at such a point that the employee necessarily had to cross a railroad track just after leaving the truck, the special hazard rule could appropriately be applied.

       *     *     *     *     *     *     *


Approaching these cases on entering and leaving the employer's conveyance along the guide lines supplied by specific exceptions to the main premises rule will make for precision and consistency, and will avoid both the vagueness of the "reasonable distance" concept and the sweeping and paternalistic implications of the quotation from the Arkansas case with which this section began, which seemed to read into the

cases, to determine liability courts generally look to the contract that entitled the employee to employer-provided transportation to and from work.  State Highway Commission v. Saylor, 68 S.W.2d 26 (Ky. Ct. App. 1933); Morris v. Hermann Forwarding Co., 113 A.2d 513 (N.J. 1955); Sihler, 19 N.E.2d 1008; Oefinger v. Texas Employers' Ins. Ass'n, 243 S.W.2d 469 (Tex. Civ. App. 1951); Ogden Transit Co. v. Industrial Commission, 79 P.2d 17 (Utah 1938).

We hold that the contract to provide transportation to Blaustein controls the outcome and that liability in this case is precluded by the terms of the employment agreement, which limited the risks Mitre agreed to assume.  Mitre did not agree to provide Blaustein with transportation between her home and NSF.  It only agreed to pay for Blaustein's Metro fare or her costs to park at NSF.[4]  It did not agree to compensate her for the time she spent en route, or to reimburse her for gas, mileage costs, or parking at the Metro station.  By contract, Mitre defined the "reasonable margin of time and space," Scott, 150 Va. at 268, 142 S.E. at 402, that formed the employment

---

> simple issuance of a free pass, which could
> be utilized at any time, a complete
> safe-conduct from the employer's gate,
> across city streets, throughout the street
> car journey, and, presumably, to the
> employee's front door.

[4] Blaustein was reimbursed $6.50 for the days she drove to and parked at NSF, and $5.50 for the days she took the Metro to NSF.

environment. It follows from the limitations Mitre placed on its agreement that Mitre specifically excluded risks that might arise in places and times remote from the specific transportation mode it agreed to pay for, to wit, taking the Metro or parking in the lot adjacent to NSF. Unlike the agreement in Scott, there was no portal to portal employer funded transportation contract between Mitre and Blaustein. The evidence fails to establish in this case an agreement to extend the coverage for injuries occurring on the employer's "premises" to the roadway leading to the Metro station. See also Saylor, 68 S.W.2d at 27 (transportation obligation fulfilled once employee exited employer's vehicle across the road from employee's house where transportation agreement merely consisted of the following: "If . . . the men lived along the road and in the direction of the work to be done, [the employer] would stop for them at the point nearest their residence and transport them to the point at which the work at said time was to be done, transporting them back in like manner when the work was finished."); Morris, 113 A.2d at 515 (employee denied compensation for injuries sustained on way home from train station where "[t]he extent of the defendant's reimbursement of Morris' traveling expenses was expressly confined by the agreement between Morris and the defendant to expenses on the railroad and in Morris' work area and omitted commutation between Morris' home and the New Brunswick railroad station");

Oefinger, 243 S.W.2d at 471 (where employer compensated claimant for bus fare only, injuries held not compensable where claimant was injured on way home from bus station); Ogden Transit Co., 79 P.2d at 20 (although employer provided claimant with free bus fare, transportation exception did not extend to injuries sustained once employee departed bus and was crossing street on his way home); cf. Barnard, 236 Va. at 47, 372 S.E.2d at 372 (accident held compensable where employee was compensated for travel time and was paid a mileage allowance); Sihler, 19 N.E.2d at 1009 (injuries held compensable where employee was injured while crossing road after departing employer's vehicle; court distinguished Sihler from similar case in which compensation had been denied by pointing to a "special agreement" to transport employee "to his home").

### B.  The Special Errand Exception

In the alternative, Blaustein contends she was on a "special errand" on the days she traveled to NSF and, therefore, her injuries are compensable under the third exception to the "coming and going" rule.  We disagree and find that the "special errand" exception does not apply in this case.

The "special errand" exception applies when the employee on his or her way to or from work is charged with some duty or task in connection with his or her employment.  Kendrick v. Nationwide Homes, Inc., 4 Va. App. 189, 191, 355 S.E.2d 347, 348 (1987).  The special errand rule may be described as follows:

> When an employee, having identifiable time
> and space limits on the employment, makes an
> off premises journey which would normally
> not be covered under the usual going and
> coming rule, the journey may be brought
> within the course of employment by the fact
> that the trouble and time of making the
> journey, or the special inconvenience,
> hazard, or urgency of making it in the
> particular circumstances, is itself
> sufficiently substantial to be viewed as an
> integral part of the services itself.

Larson, supra, § 14.05[1].

We applied the special errand exception in Harbin v. Jamestown Village Joint Venture, 16 Va. App. 190, 428 S.E.2d 754 (1993). In Harbin, the claimant was hit by a car and killed while walking to his supervisor's office, located some distance away from claimant's normal work site, in order to attend a special meeting. The claimant regularly worked in Virginia[5] and had been asked to attend thirteen hearings in the District of Columbia over a several month period. We found that the claimant's attendance at the meetings was "not a regular part of" his job. Id. at 195, 428 S.E.2d at 757. Accordingly, we found the claimant was on a special errand when he was injured while traveling to one of the hearings and, therefore, awarded benefits.

---

[5] Harbin worked on renovation projects at various apartment complexes owned by the employer. Each project lasted two to six months. We found that Harbin's "regular work site" was the project he was working on at the time of his accident. Harbin, 16 Va. App. at 191, 428 S.E.2d at 755.

This case may be distinguished from <u>Harbin</u>.  As Professor Larson has stated:

> There is less difficulty [in determining whether an employee is on a special errand] when the trip is one which is made every day, is not in itself unusually long or burdensome, and is not made for the performance of some such brief service . . . .
>
>    *       *       *       *       *       *       *
>
> If this judgment is to be made accurately in a close case, several variables must be taken into account.  One is the relative regularity or unusualness of the particular journey.  If it is relatively regular, whether every day . . . or at frequent intervals . . . the case begins with a strong presumption that the employee's going and coming trip is expected to be no different from that of any other employee with reasonably regular hours and place of work. . . .  The other two principal variables, however, are the relative onerousness of the journey compared with the service to be performed at the end of the journey.

Larson, <u>supra</u>, § 14.05[3].

Blaustein traveled to NSF almost daily over the fifteen months preceding her accident.  Blaustein's daily commute from her home to NSF was not a special occurrence, nor was she charged with any duty or task while traveling to or from NSF.  As the full commission noted, "there is no evidence that the commute to NSF was significantly onerous, long or burdensome, or different from the commute to Mitre."  Accordingly, we find the

"special errand" exception to the "coming and going" rule does not apply in this case.

In sum, we find no exception to the "coming and going" rule applies in this case.  Therefore, we find that Blaustein's injuries are not compensable under the Workers' Compensation Act, and we affirm the commission's denial of benefits.

<u>Affirmed</u>.