COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and Alston
Argued at Richmond, Virginia

UNPUBLISHED

CHARTER OAK FIRE INSURANCE COMPANY

MEMORANDUM OPINION* BY
v.      Record No. 1100-14-2            JUDGE ROSSIE D. ALSTON, JR.
                                        FEBRUARY 24, 2015
GREGORY MORGAN AND
 SANDRA CAUDILL

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Bryan M. Kirchner (Emily O. Sealy; Midkiff, Muncie & Ross,
P.C., on brief), for appellant.

Matthew O'Herron (John R. Turbitt; Turbitt, O'Herron & Leach,
PLLC, on brief), for appellees.

Charter Oak Fire Insurance Company ("insurer") appeals a decision of the Workers'

Compensation Commission ("the commission") awarding Gregory Morgan and Sandra Caudill

("claimants") benefits after finding that their injuries were compensable because they arose out

of the claimants' employment at ME Concrete ("employer").  On appeal, insurer argues that the

commission erred in finding that the claimants sustained compensable injuries that arose out of

their employment because "[t]he evidence did not show that anything about the employment

created a risk peculiar to the employment such that the injuries could fairly be traced to the

employment."  We disagree with insurer and, therefore, we affirm the commission's awards.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  Background[1]

On May 7, 2010, Ms. Caudill and Mr. Morgan were both injured after Josefina Morais, wife of Jose Morais, owner of employer, accidentally drove her sports utility vehicle through a brick-face wall of the office building in which Ms. Caudill and Mr. Morgan worked for employer.  Apparently Ms. Morais drove to employer that day to take her granddaughter to surprise her mother and Ms. Morais's daughter, Linda Quintela, who is also employer's manager.  No explanation for the accident is evident from the record.  In April and May of 2012, both Mr. Morgan and Ms. Caudill filed claims for temporary total and temporary partial disability benefits based on their injuries.[2]

On January 11, 2013, Linda Quintela was deposed.  As she did not witness the accident, Ms. Quintela testified primarily regarding the layout of and daily traffic through employer's property.  Ms. Quintela testified that employer sells concrete and does septic tank construction. A driveway/gravel road leads from Route 28 onto employer's property, ending at the office at the back of the property.  The office is one of three structures on employer's property; the other two are a septic tank building structure and a storage facility for materials.  At the time of the accident, employer owned seventeen concrete trucks, five dump trucks, and three septic tank trucks.  Ms. Quintela stated that both commercial and non-commercial vehicles access the property from the driveway on a daily basis, traveling on and off of the property to load concrete

_____

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

[2] Specifically, on April 23, 2012, Mr. Morgan filed his claim for temporary total disability benefits from May 11, 2010, through August 20, 2010, and temporary partial disability from August 20, 2010, and continuing.  On May 2, 2012, Ms. Caudill filed her claim for temporary total disability benefits from May 7, 2010, to the present and continuing.  On May 7, 2012, Mr. Morgan filed an amended claim for permanent benefits and a lifetime award of medical benefits from May 7, 2010, and continuing.

and go to job sites. Ms. Quintela estimated that approximately 50 to 100 vehicles enter employer's property on any given day. Typically, customers must come into the office to make a purchase before conducting business on the property.

Ms. Quintela testified that the office building in which claimants worked originally had truck bays on one end of the building and a storage bay or open bay on the other. When employer purchased the property, there were already plans to convert the storage bays to office space, and in 2001, employer converted the bays by enclosing them with 2" x 4" boards and drywall and configuring the interior as office space. The front of the building was covered with "brick face." As one entered the building through the glass doors at the front of the building, there was an office on the left and an office to the right, closest to the building face. After renovation, the building stood 120 feet long and 16 feet tall.

A hearing before the deputy commissioner on Mr. Morgan's and Ms. Caudill's consolidated claims was held on February 14, 2013. Ms. Quintela's deposition was admitted into evidence. Additionally, both Mr. Morgan and Ms. Caudill testified.

Mr. Morgan testified that he began working for employer in 2003. His job duties included ordering materials for the production of concrete and ready-mix, licensing and registering of all vehicles, and hiring drivers. At the time of the accident, Mr. Morgan and Ms. Caudill were working in an office space constructed in the renovated storage bay. Mr. Morgan and Ms. Caudill were both required to work to the right of the office entrance, closest to the building face. Both Mr. Morgan and Ms. Caudill sat at a desk that was attached to the wall and wrapped around the inside of the front, brick wall. Mr. Morgan testified that there was a loosely defined "parking area" outside the wall to which the desk was attached. There were no designated parking spots or parking lines and no parking blocks or other barriers between the parking area and the office building at the time of the accident. People would park

wherever they felt it appropriate, including along the same wall of the building that the vehicle drove through.

Mr. Morgan did testify that approximately two or three years prior to the accident on May 7, 2010, a large delivery truck rolled into the wall from the parking area. In that instance, the delivery truck backed up to the front of the building to make a delivery in the office. The driver failed to set the brake, and the truck rolled into the building, damaging the bricks and office door. On another occasion, a parked vehicle rolled into the building. Apparently an employee parked a flatbed truck outside the office and the truck "drifted into the building," cracking a few bricks. No one testified as to why this vehicle "drifted into the building."

On the day of the accident, Mr. Morgan testified that he and Ms. Caudill were sitting at their desk when a SUV drove through the front wall of the office. Mr. Morgan testified that he was at his desk on the phone with the post office and "the next thing [he knew] a vehicle came through the wall and pushed the, the desk into [his] abdomen." The vehicle forced Mr. Morgan "all the way to the other side of the office." Mr. Morgan "hit the copy machine and was just thrown completely across the other side of the office with debris everywhere." Mr. Morgan injured his spleen, small and large intestines, pancreas, and his left shoulder. He also suffered a collapsed lung, and had a pulmonary embolism. Mr. Morgan went back to work on August 21, 2010, and has increased his hours since then.

Ms. Caudill testified that she worked for employer from April 2001 up until the accident. Her position was dispatch and sales, which involved her answering the phone, taking customer orders, dispatching tickets, and making sure that deliveries got to their destination on time. Ms. Caudill testified to the same configuration of the office building and desk as Mr. Morgan. At the time of the accident, Ms. Caudill was sitting at her desk on the telephone with a customer. The next thing she remembers, someone told her not to move and she opened her eyes and she

was on the floor. Ms. Caudill had no recollection of what hit her. The accident injured both of Ms. Caudill's legs, her left eye, the top of her head, her back, and her hip/buttocks area. Her understanding of what occurred was that a "vehicle just drove into the building."

The deputy commissioner issued his opinion on April 16, 2013, denying both claims, finding that Mr. Morgan's and Ms. Caudill's injuries did not arise out of their employment. The deputy commissioner noted that "[i]t is an impermissible stretch to assert that working in an enclosed brick building outside of which traffic may park makes its interior office space at a higher risk and thus the workplace was a contributing proximate cause to a vehicle coming through its walls." Additionally the deputy commissioner held that "[i]t is not the position of furniture in the office or its layout which can rehabilitate a lack of a causative danger to this workplace." Finally, "[d]riving all the way into a building through a brick wall is not something reasonably foreseeable or anticipated, even though possible, and had not in that fashion ever before occurred."

Both claimants sought review and on November 18, 2013, the full commission issued its opinion reversing the deputy commissioner. The commission found that there were "other factors involved in the accident beyond being struck by a car." The commission noted that

> The location of the office wall and its proximity to motor vehicles created a peculiar and unique risk of the claimants' employment. The claimants were required to work at a specific desk in the office that was attached to the front wall. The office's proximity to the parking area made it more likely that the brick wall would be struck by vehicles. The construction of the brick wall made it more likely that the wall would be damaged or destroyed if struck, which placed those working behind it in danger. The absence of a curb, parking stops, or barriers was a unique risk of employment.

The commission also determined that driving through a brick wall was reasonably foreseeable given that the wall had been damaged by other vehicles that struck it in the past and, because the

employer was on notice that a vehicle could strike the wall, "these elements created an enhanced risk of employment." Therefore, the commission remanded the matter to the deputy commissioner for findings on disability. This appeal followed.

## II. Analysis

"Whether an employee's work-related injury arises out of his employment 'involves a mixed question of law and fact, which we review *de novo* on appeal.'" Turf Care, Inc. v. Henson, 51 Va. App. 318, 324, 657 S.E.2d 787, 789 (2008) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001)). "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" Id. (quoting Basement Waterproofing v. Beland, 43 Va. App. 352, 358, 597 S.E.2d 286, 289 (2004)). "The commission's determination regarding causation is a finding of fact and is binding and conclusive." Steadman v. Liberty Fabrics, Inc., 41 Va. App. 796, 803, 589 S.E.2d 465, 469 (2003) (citing Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993)). "It thus makes no difference that 'we would have decided the fact[s] differently,' . . . because the statute authorizes the commission to adopt whatever view of the evidence it considers 'most consistent with reason and justice[.]'" Thorpe v. Clary, 57 Va. App. 617, 623-24, 704 S.E.2d 611, 614 (2011) (citations omitted).

"'An accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.'" Liberty Mutual Ins. v. Herndon, 59 Va. App. 544, 556, 721 S.E.2d 32, 38 (2012) (quoting United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)). In considering the arising out of prong, we apply the "actual risk" test, which "'requires only that the employment expose the workman to a particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks.'" Marion Corr. Treatment Ctr.

v. Henderson, 20 Va. App. 477, 480, 458 S.E.2d 301, 303 (1995) (quoting Olsten v. Leftwich, 230 Va. 317, 319, 336 S.E.2d 893, 894 (1985)).  As this Court has explained:

> "[I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment.  But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which the workmen would have been equally exposed apart from the employment.  The causative danger must be peculiar to the work and not common to the neighborhood.  It must be incidental to the character of the business and not independent of the relation of master and servant.  It need not have been foreseen or expected, but after the event it must appear to have had its origins in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Herndon, 59 Va. App. at 556-57, 721 S.E.2d at 38 (quoting Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122-23, 704 S.E.2d 359, 363 (2011)).  However, "[t]he mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable."  Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).  "'It is generally held that the phrase "arising out of" the employment should receive a liberal construction in order to effectuate the humane and beneficent purposes of the Act.'"  Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 572, 159 S.E.2d 633, 636 (1968) (quoting Southern Motor Lines v. Alvis, 200 Va. 168, 170-71, 104 S.E.2d 735, 738 (1958)).

Employer argues that nothing about claimants' jobs or workplace subjected them to any greater risk of being hit by a vehicle than the risk generally "common to the neighborhood."  See Herndon, 59 Va. App. at 557, 721 S.E.2d at 38.  Claimants contend that the commission appropriately found that the circumstances and location of their workplace, given that their office was a converted office building in the middle of a storage bay where large trucks frequently traveled, did in fact subject them to an increased risk of being hit by a vehicle.

Both parties note that the most factually similar case to the present one is <u>Green Hand Nursery, Inc. v. Loveless</u>, 55 Va. App. 134, 684 S.E.2d 818 (2009), though they dispute its applicability. In <u>Loveless</u>, claimant worked as an assistant manager at a nursery shop where she would shut off sprinklers and take care of plants including watering, weeding, lifting, and moving them. <u>Id.</u> at 138, 684 S.E.2d at 820. The nursery was located alongside Route 17, which had a fifty-five mile-per-hour speed limit. <u>Id.</u> On the date of the accident, claimant was shutting off the last of the sprinklers about twenty-seven feet from Route 17 when she heard screeching tires and saw a vehicle "flying off" the highway. <u>Id.</u> at 139, 684 S.E.2d at 820. Claimant attempted to run to the tree line for safety but the vehicle struck her about a foot from the trees. <u>Id.</u> Claimant testified that she was hit about ten seconds after she first saw the vehicle and that as she ran from it, she tried to avoid as many obstacles such as potted plants and slippery weed mats on the ground as possible, though they did impede her path to the trees. <u>Id.</u> at 139, 684 S.E.2d at 820-21.

The commission awarded benefits and this Court affirmed, finding that "claimant's performance of her job . . . increased the risk of injury by diverting attention from the danger of the approaching vehicle." <u>Id.</u> at 143, 684 S.E.2d at 823. The Court did note that "being struck by a vehicle on the work premises alone does not establish the required causation," however the specific circumstances of claimant's job in <u>Loveless</u>, such as her distraction with the sprinkler and the obstacles which impeded her escape to safety, put claimant at an increased risk of injury. <u>Id.</u> at 142, 684 S.E.2d at 822 (citations omitted). Therefore, "but for her job duties and the physical obstacles confronting her, [claimant] could have avoided injury." <u>Id.</u>

We agree with the commission that the claimants sufficiently showed that their injuries arose out of their employment based on the specific circumstances of their office location in this case. Several facts unique to the claimants' workspace lead us to this conclusion. For example,

much like in Loveless, the location, layout of, and traffic on employer's property contributed to the risk claimants faced when working at their desk station up against the brick façade of the office building, *as required by employer.* Employer's facility is located on ten acres of property off of Route 28 and anywhere from 50 to 100 cement and septic trucks weighing a maximum of 64,000 pounds travel on, off, and within the property daily, along with other customers,' employees,' and relatives' vehicles.[3] When employer purchased the property, it converted truck bays to office space by enclosing the bays with 2" x 4" boards and drywall and configuring the interior as office space. Outside of the front/brick-faced side of the office building there was a loosely defined parking area along the wall to which claimants' desk was attached. The location of claimants' desk right up against the front of a structure directly next to an open and unrestricted parking area "'expose[d them] to a particular danger from which [they were] injured, notwithstanding the exposure of the public generally to like risks.'" Marion Corr. Treatment Ctr., 20 Va. App. at 480, 458 S.E.2d at 303 (quoting Olsten, 230 Va. at 319, 336 S.E.2d at 894).

The proximity of the undefined parking area to the claimants' workspace is also relevant. Much like how the claimant in Loveless worked right along a busy road with a high speed limit, in the present case, vehicles including large trucks frequently pulled right up to the office building and parked in undefined areas a few feet if not inches from claimants' workspace. Additionally, there were no designated parking spots or parking lines and people, including office employees, would park wherever they felt it appropriate. They could in fact park as close

---

[3] Employer argues that it is relevant to our analysis that the vehicle that crashed into the office building and injured claimants was driven by a relative of an employee who was there on personal and not professional business. We do not find this relevant to our inquiry as "[w]hat is important . . . is that [claimants'] 'work environment is such that [they are] exposed to the risk of being injured in a vehicular accident by any negligent driver, whether a customer or a friend, who comes into the premises for nothing other than a "chat."'" Park Oil Co., Inc. v. Parham, 1 Va. App. 166, 169-70, 336 S.E.2d 531, 533 (1985) (citation omitted).

to the building as they wanted as there were no parking blocks or other barriers between the parking area and the office building at the time of the accident.

This close proximity of claimants' workspace to the parking area also deprived claimants of the opportunity to react quickly or escape injury in the face of danger. See Sears Roebuck & Co. v. Martin, Record No. 2168-10-3, 2011 Va. App. LEXIS 162, at *12-13 (Va. Ct. App. May 10, 2011) (claimant injured after a customer's vehicle crashed into the pick-up lobby of a Sears where claimant was standing, directing customer's vehicle in order to load merchandise, entitled to benefits because his job and proximity to moving vehicles "exposed [claimant] 'to a greater risk of being injured in a vehicular accident such as the one that occurred'" (citation omitted)).[4] At the time of the accident, both Mr. Morgan and Ms. Caudill testified that given their positions at their desk, neither of them could see through the window closest to their desk and therefore, they had no warning before Ms. Morais's vehicle crashed through the wall. In Loveless, the Court found the claimant's distraction particularly relevant in determining that her injuries arose out of her employment. Though not specifically a distraction in this case, the principle applies in that due to the design of the building and its closeness to the parking area, claimants had no warning of an incoming vehicle or time to attempt to escape to safety.

Finally and most significantly, employer was not unaware of the potential hazard. Though we do not apply a foreseeability standard in these cases, it is relevant that approximately two or three years prior to this accident, a large delivery truck rolled into the wall from the parking area and on another occasion, a parked vehicle rolled into the building. These previous incidents made it unsurprising, if not quite likely, that a vehicle would again crash into the office building, despite the brick façade. All of these factors – the previous incidents, the office

---

[4] Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350, 735 S.E.2d 255, 257 (2012) (citing Rule 5A:1(f)).

building's location in the middle of a ten-acre graveled property with trucks and customers freely driving throughout, the design and construction of the office building, claimants' position within the building at a desk situated up against the front wall, and lack of any defined or enclosed parking area – lead us to conclude that claimants' injuries arose out of their employment because there was a "causal connection between the [claimants' injuries] and the conditions under which the employer require[d] the work to be performed.'" Herndon, 59 Va. App. at 556, 721 S.E.2d at 38 (quoting Fetterman, 230 Va. at 258, 336 S.E.2d at 893). Based on the facts of this case, the commission's decision was supported by credible evidence and, therefore, we affirm its awards.

Affirmed.