COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia


STEPHEN HERSL

MEMORANDUM OPINION[*] BY
v.        Record No. 0278-14-4          JUDGE TERESA M. CHAFIN
                                        OCTOBER 21, 2014

UNITED AIRLINES, INC.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Kathleen Grace Walsh (Dinh H. Ngo; Law Office of Kathleen Grace
Walsh, on briefs), for appellant.

Michael N. Salveson (Charles F. Trowbridge; Littler Mendleson,
P.C., on brief), for appellee.


Stephen Hersl ("Hersl") appeals a decision of the Virginia Workers' Compensation

Commission ("the commission") denying him workers' compensation benefits for injuries he

sustained when he fell from the bed of a pickup truck while delivering airplane parts for United

Airlines, Inc. ("United Airlines").  On appeal, Hersl contends that the commission erred in

determining that his injuries did not arise out of his employment because his fall was

unexplained.  We disagree with Hersl's argument and affirm the commission's decision.

I.  BACKGROUND

On appeal, this Court views the evidence in the light most favorable to United Airlines,

the prevailing party before the commission.  See Liberty Mut. Ins. Corp. v. Herndon, 59

Va. App. 544, 550, 721 S.E.2d 32, 35 (2012).  So viewed, the evidence established that Hersl

was employed by United Airlines as a store keeper.  His regular duties included storing airplane

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

parts and picking up and delivering airplane parts to different gates at Dulles International Airport. He had been employed in this position by United Airlines for approximately six weeks at the time of his accident.[1] On March 27, 2012, Hersl fell from the bed of a pickup truck while delivering airplane parts to one of the gates at the airport. Although Hersl has no memory whatsoever concerning his activities on that date, Jose Edwards ("Edwards"), a coworker, observed his accident.

On the date of the accident, Edwards was employed as a baggage handler by United Airlines. His duties required him to load and unload bags from airplanes. While Edwards was waiting to load bags from an airplane onto a baggage cart, he observed Hersl walking back and forth in the bed of a pickup truck carrying a package. Edwards did not know Hersl, and he had no contact with him before the accident. Edwards estimated that the truck was about thirty to forty feet away from him at this time. Edwards testified that the tailgate of the truck was down and that the bed of the truck was approximately three and a half to four feet from the ground. Edwards saw Hersl walk toward the tailgate holding a package and then fall off the end of the tailgate. He noted that Hersl probably landed on his head due to the angle of his fall. As Edwards's view was partially obscured by a baggage cart, however, he did not actually see Hersl hit the ground. Edwards testified that he did not know what caused Hersl to fall.

Edwards came to Hersl's aid immediately following the fall and found him unconscious, lying face down with the side of his face resting on the ground. He did not see any visible cuts or bruising or any blood around Hersl. Edwards waited with Hersl for approximately twelve

---

[1] Prior to his employment with United Airlines, Hersl was employed as a firefighter for twenty years in Baltimore, Maryland. He retired from this career due to injuries to his leg, knee, shoulders, nose, and heart, and received permanent total disability benefits based on these injuries. Hersl testified, however, that these injuries did not affect his ability to work.

minutes before an ambulance arrived. Hersl did not regain consciousness during this time, and he started to turn blue or purple. The ambulance took Hersl to Inova Fairfax Hospital.

Hersl complained of upper and lower back pain and an intense headache when he arrived at the hospital. He could not recall his accident, and did not recognize another coworker. Dr. Margaret Griffen admitted Hersl to the hospital, and noted that he was amnestic to the events of the accident due to a loss of consciousness. The hospital admission report indicated that there was no obvious trauma to Hersl's head or spine. CT scans of Hersl's brain and cervical and thoracic spine revealed no acute trauma, and a CT scan of his lumbar spine showed only multi-level degenerative changes. Hersl was diagnosed with a headache, concussion, photophobia, and acute pain related to trauma, and he was discharged from the hospital the following day.

Hersl filed a claim for workers' compensation benefits with the commission on October 7, 2012, alleging injuries to his head, brain, and spine arising out of his March 27, 2012 work accident. Hersl still had no memory of the accident when he testified at the initial hearing concerning his claim. He could not remember any details concerning his fall or his actions immediately preceding it, and stated that the only thing he remembered about the incident was waking up in the hospital. The evidence presented to the commission describing Hersl's fall came primarily from Edwards's testimony.

After reviewing the evidence presented, Deputy Commissioner Colville denied Hersl's claim for benefits. While the deputy commissioner found that Hersl sustained injuries to his head and lower back in the course of his employment, she held that Hersl failed to prove that his fall arose out of his employment. The deputy commissioner found no basis for concluding that Hersl's unexplained fall resulted from a risk of his employment. Specifically, she concluded that

even with the testimony of Mr. Edwards, [Hersl's] fall is unexplained as we cannot determine what caused him to fall off the bed of the pickup truck from [his own testimony] or from the medical information available. All we know is that Hersl fell from the truck and to speculate why is not a permissible inference.[2]

Hersl requested that the full commission review Deputy Commissioner Colville's decision. A majority of the full commission affirmed the deputy commissioner's decision. The majority held that Hersl failed to establish a "critical link" between his fall and a risk of his employment because the evidence he presented failed to explain what caused the fall itself. One commissioner dissented, concluding that the evidence presented and the circumstances of Hersl's fall established that his accident arose from his employment. The dissenting commissioner felt that Hersl's "dangerous position on the tailgate of a pickup truck" established the "critical link" between his employment and his accident. Hersl appealed the commission's decision to this Court.

## II. ANALYSIS

The paramount issue presented on appeal is whether Hersl established that his accident arose from the conditions of his employment. The commission's decision that an accident arises out of employment presents a mixed question of law and fact. See Herndon, 59 Va. App. at 555, 721 S.E.2d at 37. While we review the ultimate legal issue *de novo*, "the commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008). Further, on appeal we view the evidence in the light most favorable to the party who prevailed before the commission. See id. at 311, 657 S.E.2d at 783.

---

[2] The deputy commissioner also held that the evidence failed to establish that Hersl fell due to an idiopathic condition, such as syncope (i.e. fainting). On appeal, Hersl does not contend that an idiopathic condition caused his fall.

- 4 -

"'To qualify for workers' compensation benefits, an employee's injuries must result from an event "arising out of" and "in the course of" the employment.'" PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 221, 468 S.E.2d 688, 691 (1996) (quoting Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380, 410 S.E.2d 646, 647 (1991)); see also Code § 65.2-101. "In proving the 'arising out of' prong of the compensability test, a claimant has the burden of showing that 'there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" PYA/Monarch, 22 Va. App. at 221-22, 468 S.E.2d at 691 (quoting Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 434, 437 S.E.2d 727, 729 (1993) (en banc)). "The mere fact that an employee was injured at work is not enough to show that his injury arose out of his employment." Griffin, 51 Va. App. at 313, 657 S.E.2d at 784. "'[A] "critical link" must exist between the conditions of the workplace and the injury in order for the injury to qualify as "arising out of" the employment.'" PYA/Monarch, 22 Va. App. at 221, 468 S.E.2d at 691 (quoting Pinkerton's, 242 Va. at 380, 410 S.E.2d at 647).

"[A]n unexplained fall is not compensable 'in the absence of a showing that the [injury] "arose out of" the employment.'" Id. at 225 468 S.E.2d at 693 (quoting Pinkerton's, 242 Va. at 381, 410 S.E.2d at 648). "When a claimant has no memory of how [an] accident occurred and there are no witnesses to the accident, that claimant often cannot fulfill his or her burden to show [the] vital causal nexus between the employment and the injury." Griffin, 51 Va. App. at 314, 657 S.E.2d at 785. Thus, unexplained falls are generally not compensable under such circumstances. See id.

> However, the mere nonexistence of direct evidence in the form of
> the claimant's memory or an eyewitness' account does not, in and
> of itself, preclude an award of benefits. On the contrary, the
> commission may find an explanation for an accident based on
> circumstantial evidence, when that evidence "allows an inference

- 5 -

> that the claimant suffered an injury by accident arising out of . . . his employment."

Id. at 314-15, 657 S.E.2d at 785 (quoting Marketing Profiles, 17 Va. App. at 433, 437 S.E.2d at 728). Nevertheless, circumstantial evidence implying that an employee's accident arose from his or her employment must determine the issue beyond surmise or mere conjecture in order to support an award of workers' compensation benefits. See id. at 315, 657 S.E.2d at 785; Sullivan v. Suffolk Peanut Co., 171 Va. 439, 443, 199 S.E. 504, 506 (1938) ("[A workers' compensation] award based upon surmise or conjecture will be set aside.").

In the present case, Hersl failed to offer an explanation for the cause of his fall at work. He could not remember any details concerning his fall or his other activities on the day of the accident. Moreover, Edwards's testimony failed to explain the cause of Hersl's fall. Although Edwards observed the accident, he candidly admitted that he did not know why Hersl fell. His testimony established that Hersl was walking toward the tailgate of the pickup truck carrying a package before he fell from the truck, but it failed to suggest any explanation as to the cause of the fall.

Furthermore, the record before the commission failed to establish that Hersl fell due to any work-related duties or environmental conditions. For example, Hersl did not present any evidence suggesting that he slipped on a foreign substance in the truck bed or that he tripped over the tailgate of the truck or another package. Likewise, he did not present evidence attributing his fall to the package he was carrying. Neither Hersl's nor Edwards's testimony implied that Hersl fell due to the size or weight of the package,[3] and both witnesses could not

---

[3] While the package in question was described as "small" in the depositions of coworkers contained in the record, no witnesses testified as to the package's size or weight at the hearing before the commission and the commission did not make any specific factual findings concerning its physical properties.

recall whether Hersl was still holding the package when he fell from the truck. Additionally, the evidence failed to establish that Hersl fell because his attention was diverted from his surroundings by other conditions of his employment.

On appeal, Hersl attempts to link his injury to his employment through the height of the bed of the pickup truck. Like the dissenting commissioner, Hersl claims that the three and a half to four feet high truck bed put him in a uniquely "dangerous position," and therefore constituted a risk of employment. Hersl bases this argument primarily on Herndon. In Herndon, this Court upheld an award of workers' compensation benefits to an employee who fell from a height at a construction site. See 59 Va. App. at 561-62, 721 S.E.2d at 40-41. The employee in Herndon was pulling sheets of plywood onto the second story of a building that was under construction through a hole in the floor that would eventually be filled by a stairwell when he fell through the hole and landed two stories below in the basement of the building. See id. at 551-52, 721 S.E.2d at 35-36. Although the employee could not remember falling, this Court held that, because the employee's fall "was a result of the work environment and the fall from height caused his injuries, he has established the 'causal connection between the . . . injury and the conditions under which the employer require[d] the work to be performed.'" Id. at 562, 721 S.E.2d at 41 (quoting United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)). This Court explained that "where a claimant has sufficiently proved the existence of a causal relationship between the injury and a hazard in the workplace that is '"uniquely dangerous" and not something that would "routinely be encountered by anyone,'" the injury necessarily arises out of employment." Id. at 559, 721 S.E.2d at 39 (quoting Turf Care v. Henson, 51 Va. App. 318, 326, 657 S.E.2d 787, 791 (2008)). This Court then cited Turf Care, Griffin, and Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 597 S.E.2d 286 (2004), to illustrate other cases upholding awards when employees were injured after falling

from heights at which their employment required them to work.  See Herndon, 59 Va. App. at 559, 721 S.E.2d at 39.

The present case is distinguished from Herndon, Turf Care, Basement Waterproofing, and Griffin by several important circumstances.  Hersl's work environment was patently less dangerous than the work environments encountered by the employees in those cases.  More importantly, the injured employees in Herndon, Turf Care, Basement Waterproofing, and Griffin provided details of the work activities in which they were engaged immediately before their falls from which the commission could reasonably infer that their falls were caused by a condition of their employment.  See Herndon, 59 Va. App. at 551-52, 721 S.E.2d at 36 (employee and coworkers described employee's activities preceding his fall); Griffin, 51 Va. App. at 311, 657 S.E.2d at 783 (employee described his activities immediately before his fall); Turf Care, 51 Va. App. at 323-24, 657 S.E.2d at 789 (coworker witnessed the fall and described employee's activities immediately preceding the fall); Basement Waterproofing, 43 Va. App. at 355, 597 S.E.2d at 287 (employee described his activities immediately preceding his fall).  In Herndon, Turf Care, Basement Waterproofing, and Griffin, the commission could reasonably infer that the employees' injuries arose from the conditions of their employment based on both the degree of danger posed by their particular work environments and the particular work activities that caused or contributed to their falls.  Hersl, however, failed to present comparable evidence to support a similar inference.

Hersl's work environment did not present the same degree of danger as the work environments faced by the employees in Herndon, Turf Care, Basement Waterproofing, and, to a lesser extent, Griffin.  As previously stated, the employee in Herndon was injured while pulling sheets of plywood through a hole on the second story of an unfinished building.  See Herndon, 59 Va. App. at 551-52, 721 S.E.2d at 35-36.  Moreover, the employee had to stand within two

feet of the hole in order to pull the plywood through it.  See id. at 552, 721 S.E.2d at 36.

Carrying a package in the bed of a pickup truck simply does not present the same degree of risk

as that encountered by the employee in Herndon.  Working in the bed of a pickup truck exposes

an employee to a lesser height, and carrying one package is less strenuous than pulling sheets of

plywood from one story of a construction site to another.

In Basement Waterproofing and Turf Care, employees were injured when they fell from

ladders.  "Ladders, in and of themselves, are dangerous, and accidents involving ladders cannot

be properly evaluated without taking into consideration the increased risk."  Basement

Waterproofing, 43 Va. App. at 360, 597 S.E.2d at 290.  In Basement Waterproofing, an

employee was injured when he fell eight feet from a ladder while applying tar and sealant to

holes in a precast concrete stoop.  Id. at 354-55, 597 S.E.2d at 287.  He held a bucket containing

the tar and sealant weighing twenty to thirty pounds in one hand while he applied the tar/sealant

mixture to the stoop with his other hand.  Id. at 355, 597 S.E.2d at 287.  Therefore, he could not

hold onto the ladder with his hands for support.  Id.  In Turf Care, an employee fell from a

forty-foot extension ladder leaning against the side of a home while he was cleaning leaves and

other debris from the gutters of the home.  Turf Care, 51 Va. App. at 323, 657 S.E.2d at 789.

The employee carried a five-gallon bucket in one hand, removed the leaves and debris from the

gutters with his other hand, and then placed the leaves and debris into the bucket.  Id.  Thus, like

the employee in Basement Waterproofing, the employee in Turf Care could not hold onto the

ladder with his hands due to his employment duties.  See id. at 325-26, 657 S.E.2d at 790.  The

facts of the present case differ from both Basement Waterproofing and Turf Care.  Hersl fell

from the bed of a pickup truck, not from a ladder.  Further, Hersl did not present any evidence

linking his fall to any particular activity he was performing as a condition of his employment.

In Griffin, a landfill technician and equipment operator sustained injuries when he fell from a piece of equipment that he had parked on a flatbed trailer. Griffin, 51 Va. App. at 311, 657 S.E.2d at 783. The employee fell as he exited the cab of the equipment (a front-end loader) and "rocked his body forward to make sure that he had applied the brake." Id. The equipment sat six and a half feet from the ground when it was parked on the trailer, and the employee had to descend from this height down a "worn and rusted step." Id. at 316, 657 S.E.2d at 785. This Court affirmed the commission's decision that the employee's injuries arose out of his employment, finding that his fall resulted from the awkward maneuver he made when checking the brake of the equipment and his descent down the worn step. Id. at 316-17, 657 S.E.2d at 785-86. While both Hersl and the employee in Griffin fell from the beds of trucks, no evidence in the record implies that Hersl was executing an awkward maneuver when he fell. Additionally, Hersl's fall did not result from his attempt to descend from the pickup truck down worn or otherwise defective steps.

The present case is more similar to PYA/Monarch than Herndon, Turf Care, Basement Waterproofing, and Griffin. In PYA/Monarch, an employee drove a delivery truck through freezing rain. PYA/Monarch, 22 Va. App. at 219, 468 S.E.2d at 690. When he reached his last delivery stop on the evening in question, he stood up, opened the truck door, and reached for the "grab bar" on the outside of the cab of the truck. Id. The employee then woke up lying on the pavement beside the truck. Id. He had no memory of how he reached the ground, and no one witnessed the accident. Id. The driver's seat in the cab of the truck, however, was located six and a half feet above the ground, and the surface of the truck was covered in ice. Id. at 219-20, 468 S.E.2d at 690. The commission awarded the employee workers' compensation benefits and concluded that his fall was "precipitated by the design or icy condition of the cab or both." Id. at 220, 469 S.E.2d at 690. This Court reversed the commission's decision, finding that the

- 10 -

evidence presented to the commission was insufficient to establish a basis for the employee's fall.[4] See id. at 224, 468 S.E.2d at 692. This Court noted that the employee "could not recall any details of the accident" and that "[h]e never testified that he slipped or tripped on one of the ladder rungs [leading from the cab of the truck to the ground], or that he lost his grip on the grab bar." Id.

In distinguishing PYA/Monarch from Turf Care, this Court reasoned that the employee in PYA/Monarch "was not in a uniquely dangerous position at the time of his injury, and no testimony described in detail his activities immediately before his fall." Turf Care, 51 Va. App. at 327, 657 S.E.2d at 791. The same circumstances exist in the present case. In fact, Hersl was actually in a less dangerous position than the employee in PYA/Monarch. He fell from a lesser height, and he presented no evidence attributing his injury to treacherous weather conditions, such as heavy rain or ice.

While Hersl fell from a moderate height of three and a half to four feet, his position in the bed of the pickup truck did not present the same degree of risk encountered by the employees in Herndon, Turf Care, Basement Waterproofing, and Griffin. Furthermore, like the employee in PYA/Monarch, Hersl did not present testimony describing the details of his fall. Although

---

[4] The commission actually erred in PYA/Monarch by awarding the employee benefits based on an improper application of the doctrine of idiopathic falls. See PYA/Monarch, 22 Va. App. at 224-25, 468 S.E.2d at 692-93. An idiopathic fall is a fall "caused by a preexisting personal disease of the employee." Southland Corp. v. Parson, 1 Va. App. 281, 283, 338 S.E.2d 162, 163 (1985). "'[T]he effects of [an idiopathic fall] are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as *on a height*, near machinery or sharp corners, or in a moving vehicle.'" PYA/Monarch, 22 Va. App. at 222, 468 S.E.2d at 691 (emphasis added) (quoting Southland, 1 Va. App. at 284-85, 338 S.E.2d at 164). This Court held that the employee's fall in PYA/Monarch was unexplained rather than idiopathic because the evidence presented failed to establish *any* explanation of the fall. See id. at 224-25, 468 S.E.2d at 692-93. As this Court concluded that the employee's fall in PYA/Monarch was unexplained, it is instructive under the similar circumstances of the present case.

Edwards observed Hersl carrying a package and walking toward the tailgate of the truck before he fell, no evidence established that Hersl actually fell due to these activities. The record contains no evidence establishing that the moderate height of the bed of the pickup truck, in itself, or any other condition of Hersl's employment caused him to fall. Neither Edwards nor Hersl testified that his fall was causally related to some condition of the truck, Hersl's handling of the package, an awkward maneuver, or his general inattention due to some other work duty. Under these circumstances, the commission did not err by refusing to infer that Hersl's fall arose out of his employment. Hersl did not establish a "critical link" between the conditions of his workplace and his injuries. Accordingly, we affirm the commission's decision.

<u>Affirmed.</u>