COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and McCullough
Argued by teleconference


JAMES RUSH

                                                      OPINION BY
v.        Record No. 1886-14-3        JUDGE STEPHEN R. McCULLOUGH
                                                    MARCH 31, 2015
UNIVERSITY OF VIRGINIA HEALTH SYSTEM/
 COMMONWEALTH OF VIRGINIA


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Bradford M. Young (George L. Townsend; HammondTownsend,
        PLC, on briefs), for appellant.

        Adam L. Katz, Assistant Attorney General (Mark R. Herring,
        Attorney General; Rhodes B. Ritenour, Deputy Attorney General;
        Peter R. Messitt, Senior Assistant Attorney General, on brief), for
        appellee.

        James Rush sustained a head injury while working at the University of Virginia Hospital.

He has no memory of the circumstances of the accident that led to his injury.  He challenges the

Virginia Workers' Compensation Commission's decision to deny his claim for benefits.

Specifically, he argues that the commission erred in several respects:  (1) in its construction of

Code § 65.2-105; (2) in finding that appellant did not prove that his injury arose out of his

employment; and (3) in failing to address whether his injury occurred in the course of his

employment.  We affirm the decision of the commission.

                                    BACKGROUND

        Rush worked as a patient care technician for the hospital at the University of Virginia

Health System.  His daily uniform included surgical scrubs, head gear, a mask, and shoe covers.

His responsibilities included placing equipment and supplies in operating rooms.  He also helped

with other tasks, such as retrieving blood for surgeries. Occasionally, Rush's schedule allowed him some downtime. He spent this time in an unused room, preparing for the next case or learning, through computer training, how to use new equipment.

On July 23, 2011, a housekeeper noticed that Rush was wandering around and that he had blood on his face. He "didn't look right." Rush looked "dazed," and he smelled of urine and feces. Hospital personnel later located him in a restroom. Rush had a "golf ball-sized knot on his head right above his eye," his head was swollen, and he was unable to stand. Rush was conscious and responsive but confused.

Although hospital staff attempted to determine what happened to Rush, they were unable to do so. They established that Rush fell in one of the operating rooms. The precise cause of the fall, however, remains unknown. Hospital staff found blood smeared on one of the computer desks in this operating room, as well as vomit and a small amount of blood on the floor. They found Rush's badge on the floor along with some pens. One of the chairs in the room was overturned. Rush was never able to recall the circumstances of his accident. He remembered using his ID to enter a room and later walking toward the door. He did not remember falling or having a seizure. Nobody else was present in the operating room.

Upon his discharge, Rush's doctors diagnosed him with hydrocephalus and an epidural hematoma.[1] The hydrocephalus was "chronic [and] longstanding . . . with thinning of his cranial

---

[1] Hydrocephalus is defined as

> a condition marked by dilatation of the cerebral ventricles, most often occurring secondarily to obstruction of the cerebrospinal fluid pathways . . . , and accompanied by an accumulation of cerebrospinal fluid within the skull; the fluid is usually under increased pressure, but occasionally may be normal or nearly so. . . . In adults the syndrome includes incontinence, imbalance, and dementia.

bone." Several physicians concluded that he suffered a seizure and fell. The fall caused

additional injuries. Rush's brain injury required complex surgery and extensive follow-up care.

Rush testified that the floors of the operating rooms were waxed every night, and as a

result, they were slippery. He also stated that he was required to wear shoe covers, which

provide little traction on the floor. Rush could not recall, however, whether the floors were

slippery on the day of his accident. In his testimony before the deputy commissioner, Rush

denied experiencing prior seizures. On the day of the accident, however, he told his doctors that

he had experienced two similar episodes of loss of consciousness.

Rush filed a claim for temporary total disability benefits and for medical benefits. The

deputy commissioner denied the claim, concluding that Rush had not met his burden of proving a

work-related cause of the accident. The deputy commissioner also held that the presumption

found in Code § 65.2-105 did not apply. Rush appealed to the commission. The commission

unanimously affirmed, likewise concluding that the claimant had failed to meet his burden of

proving that his injuries arose out of his employment. In connection with the presumption

provided in Code § 65.2-105, the commission found that,

> there is no competent medical evidence the claimant was
> physically or mentally unable to testify. Although he did not recall
> how he sustained injury on July 23, 2011 and was suffering
> anterograde amnesia about the events of that day, the claimant
> presented no medical evidence he was unable to testify. Therefore,
> the claimant did not prove he was entitled to rely upon the Code
> § 65.2-105 presumption.

Dorland's Illustrated Medical Dictionary 783 (28th ed. 1994). A "hematoma" is "a localized collection of blood, usually clotted, in an organ, space, or tissue, due to a break in the wall of a blood vessel." Id. at 742. A subdural hematoma is one that occurs below the dura mater, i.e., "the outermost, toughest, and most fibrous of the three membranes . . . covering the brain and spinal cord." Id. at 512, 742.

The commission declined to address the question of whether Rush's injuries occurred in the course of his employment. This appeal followed.

ANALYSIS

On appeal, we view the evidence in the light most favorable to "'the prevailing party before the commission,'" in this instance, the employer. Bernard v. Carlson Cos. – TGIF, 60 Va. App. 400, 403, 728 S.E.2d 508, 509 (2012) (quoting Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d 431, 433 (2008)). This case presents legal questions, which we review *de novo*. Uninsured Emp'r's Fund v. Gabriel, 272 Va. 659, 662, 636 S.E.2d 408, 411 (2006). "The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989). To obtain benefits, a claimant must shoulder the burden of proving "by a preponderance of the evidence three elements: (1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment." Southland Corp. v. Parson, 1 Va. App. 281, 283-84, 338 S.E.2d 162, 163 (1985).

"In an unexplained fall case, such as this, '[a]n accident arises out of the employment when there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.'" Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 556, 721 S.E.2d 32, 38 (2012) (alteration in original) (quoting United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)). Virginia adheres to the actual risk test to determine whether such a causal connection exists. Cnty. of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 75-76 (1989).

> "Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of

the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But [the actual risk test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122-23, 704 S.E.2d 359, 363 (2011) (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)). Under the "actual risk" test, "where a claimant has sufficiently proved the existence of a causal relationship between the injury and a hazard in the workplace that is 'uniquely dangerous and not something that would routinely be encountered by anyone,' the injury necessarily arises out of the employment." Herndon, 59 Va. App. at 559, 721 S.E.2d at 39 (quoting Turf Care v. Henson, 51 Va. App. 318, 326, 657 S.E.2d 787, 791 (2008)).

There is no dispute that Rush could not recall what happened or what caused his accident. Rush acknowledges that, to prevail on his claim, he must obtain the benefit of the burden-shifting presumption found in Code § 65.2-105. At the time of Rush's accident, this code section provided as follows:

> In any claim for compensation, where the employee is physically or mentally unable to testify as confirmed by competent medical evidence and where there is unrebutted prima facie evidence that indicates that the injury was work related, it shall be presumed, in the absence of a preponderance of evidence to the contrary, that the injury was work related.[2]

---

[2] The General Assembly amended Code § 65.2-105 in 2012 and 2013. See 2012 Va. Acts ch. 841; 2013 Va. Acts ch. 169.

The commission interpreted this statute to mean that a claimant must be unable to testify at the time of the hearing. Rush was able to – and did – testify at the hearing before the deputy commissioner. Rush argues that the statute is ambiguous and that it can be interpreted to mean that the claimant must be unable to testify about the occurrence of the accident, regardless whether he can physically testify at a hearing. In other words, his argument is that Code § 65.2-105 applies when a claimant faces temporary amnesia of the kind Rush experienced.

Rush seeks to analogize Code § 65.2-105 to the situation in Jones v. Commonwealth, 22 Va. App. 46, 467 S.E.2d 841 (1996). In that case, this Court held that a witness was "unavailable" for purposes of a hearsay exception when the witness had testified to his recollection at a preliminary hearing but claimed he could not recall the facts at the time of trial. Id. at 52, 467 S.E.2d at 844. Rush argues that "[t]he lesson of Jones is that a witness can be 'unavailable' despite his physical presence in the courtroom with all of his faculties in place." We do not find the analogy persuasive. Jones turned on hearsay concepts and, specifically, whether a witness can be deemed "unavailable" when the witness is physically present but mentally unable or unwilling to testify. The scope of the exception to the hearsay rule at issue in Jones was developed through case law. Courts do not have the same latitude in interpreting the plain language of a statute, Code § 65.2-105.

Code § 65.2-105 expressly provides that the employee must be "physically or mentally unable to testify." Rush was able to testify. Rush expressly asks us to interpret the statute to read that the employee must be "unable to testify *about the occurrence of the accident*." This additional language, however, is not found in the language of the statute. "It is axiomatic that when the language of a statute is unambiguous, we are bound by that language and will not add words to the statute that would expand the scope of the statute." Seguin v. Northrop Grumman Sys. Corp., 277 Va. 244, 248, 672 S.E.2d 877, 879 (2009); see also City of Richmond v. Collins,

- 6 -

186 Va. 298, 300, 42 S.E.2d 259, 260 (1947) ("[C]ourts are not permitted to depart from the plain language of the statute. We can only expound and construe it as written.").

Rush invokes a longstanding canon of construction, that the Workers' Compensation Act is to be "liberally construed to carry out [the Act's] humane and beneficial purposes." Baggett Transp. Co. of Birmingham, Ala. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978). Virginia courts have recognized, however, that "[r]ules of liberal construction cannot properly be applied to rewrite a statute in order to alter what it actually says." Richman v. Nat'l Health Labs., Inc., 235 Va. 353, 357, 367 S.E.2d 508, 511 (1988). In enacting Code § 65.2-105, the General Assembly adjusted, in a limited and specific fashion, the ordinary burden of proof by creating a presumption in favor of an employee who is mentally or physically unable to testify. It is not for this Court to recalibrate this balancing of burdens. We decline to rewrite the statute and expand further the exception found in Code § 65.2-105.[3] Without the benefit of Code § 65.2-105, Rush cannot meet his burden of proving a work-related accident.

CONCLUSION

We affirm the decision of the commission.

Affirmed.

---

[3] In his remaining assignments of error, Rush argues that the commission erred in finding that he did not prove that his injury arose out of his employment and erred in failing to address whether the injury occurred in the course of his employment. As Rush's brief indicates, and as counsel made clear at oral argument, see oral argument at 23:00 through 24:00, without the benefit of the presumption found in Code § 65.2-105, he cannot prevail on those assignments of error. In light of our interpretation of Code § 65.2-105, we do not address the remaining assignments of error.